UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THOMAS E. ONEAL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 1:14-cv-00162-TWP-DKL |
| CAROLYN W. COLVIN, Commissioner of the Social Security Administration, | ) ) ) ) |
| Defendant. | ) ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Thomas E. Oneal ("Mr. Oneal") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act").[1] For the reasons set forth below, the Court **AFFIRMS** the decision of the Commissioner.

### I. BACKGROUND

**A. Procedural History**

On May 13, 2011, Mr. Oneal filed an application for DIB, alleging a disability onset date of February 1, 2009. The claim initially was denied on July 5, 2011, and again on reconsideration on October 17, 2011. Mr. Oneal filed a written request for a hearing. On September 11, 2012, a hearing was held before Administrative Law Judge Julia D. Gibbs (the "ALJ"). Mr. Oneal participated in the hearing and was represented by an attorney. On October 19, 2012, the ALJ

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits or Supplemental Security Income. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted decisions.

denied Mr. Oneal's application for DIB. On December 4, 2013, the Appeals Council denied Mr. Oneal's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. On February 4, 2014, Mr. Oneal filed this action for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## B. Factual Background

At the time of his alleged disability onset Mr. Oneal was 33-years old and at the time of the ALJ's decision he was 36-years old. Mr. Oneal attended school until eighth grade, spending much of his time in special education classes. In 1993, he completed his GED. Although Mr. Oneal later took night classes to become a mechanic, he never completed the program. He is married and has two sons, ages eleven and twelve. Mr. Oneal has worked a variety of jobs in the past twenty years, including cook, pizza delivery driver, fast food employee, construction laborer, and, most recently, a shipper for a floral company. He has not worked since February 2009. Mr. Oneal was laid off from the floral company at that time. Mr. Oneal alleges that his medical challenges have prevented him from working since 2009. However, he did not receive any medical or psychiatric care between 2009 and 2011 because he did not have Medicaid until 2011. Mr. Oneal was treated for lower back pain in June 2012.

Mr. Oneal's childhood was filled with medical and emotional challenges. He has been blind in his left eye since he injured it at the age of two. He was born with a congenital heart defect, Ebstein's anomaly, for which he has undergone five surgeries, most recently in 1993. His father died when Mr. Oneal was five, and his mother died when he was seventeen. Mr. Oneal lived in several foster homes during his childhood. When he was ten years old, Mr. Oneal was sexually molested by a neighborhood boy. He consumed alcohol during his teenage years and was twice convicted of theft, once as a juvenile and once as an adult.

In addition to his heart problems and blindness in the left eye, Mr. Oneal also suffers from depression, anxiety, bipolar disorder, intermittent explosive disorder, defiance disorder, and a learning disability. Mr. Oneal's partial blindness results in impaired peripheral vision and depth perception. His heart condition can result in shortness of breath, fatigue, and chest pain, especially when Mr. Oneal physically exerts himself. For example, he testified that he was only able to mow the yard for ten or fifteen minutes before taking a break. Mr. Oneal's learning disability made it difficult for him to read while in school. As part of his daily activities, Mr. Oneal helps his children with their homework, engages in household cleaning and yard work, performs household repairs, cleans his barn, gardens, does mechanic work, watches television, and plays video games.

After Mr. Oneal filed his application for DIB, a medical examination was conducted. Dr. Elizabeth Brater ("Dr. Brater"), conducted the medical examination and observed that Mr. Oneal can stand for approximately four hours in an eight hour period, can lift at least twenty pounds with either arm, and has mobility. Dr. Brater determined that Mr. Oneal had the capacity "for light work with occasional posturals with limited exposure to extreme temperatures and monocular vision." ([Filing No. 13-2 at 18](Filing No. 13-2 at 18).) Two state agency medical consultants reviewed the record, coming to the same conclusion.

Mr. Oneal testified that his intermittent explosive disorder results in him having a very short temper. He becomes frustrated easily, and his temper quickly escalates to yelling and sometimes throwing things. Mr. Oneal has been diagnosed with defiance disorder, resulting in occasional conflicts with authority figures. He has lost jobs because of disagreements with managers. Mr. Oneal testified that his anger management issues have increased since he stopped working. He provided examples of growing angry when his lawn mower would not start or when

he discovered moles and gophers in his yard. Mr. Oneal's anger has resulted in him leaving several jobs, and he believes it contributes to his difficulty in finding employment.

Mr. Oneal also experiences anxiety and stress. His anxiety disrupts his sleep and makes it difficult for him to trust people. He has a decreased appetite. Mr. Oneal cries regularly, at least every other day. In May 2011, Mr. Oneal began receiving mental health treatment from Meridian Health Services. The clinician at Meridian noted possible diagnoses of depression and post-traumatic stress disorder, giving Mr. Oneal a global assessment of functioning ("GAF") score of 40, which corresponds to "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." ([Filing No. 13-2 at 17](Filing No. 13-2 at 17).) Mr. Oneal returned to Meridian for counseling many times, but the diagnoses remained the same and treatment never progressed beyond counseling.

As part of the disability claims process, Mr. Oneal underwent a psychiatric consultative evaluation with Dr. Regina McKinney ("Dr. McKinney") in June 2011. She diagnosed Mr. Oneal as suffering from major depressive disorder but with only one, mild incident. Dr. McKinney assigned Mr. Oneal a GAF score of 62, which corresponds to "some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." ([Filing No. 13-2 at 18](Filing No. 13-2 at 18).) Two state agency psychiatric consultants concluded, after reviewing records, that Mr. Oneal did not have any work-related mental limitations.

## II.    DISABILITY AND STANDARD OF REVIEW

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment (*i.e.* one that significantly limits his ability to perform basic work activities) that meets the durational requirement, he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii).

In order to determine steps four and five, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"), which is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a

5

reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. THE ALJ'S DECISION

The ALJ first determined that Mr. Oneal met the insured status requirement of the Act for DIB through September 20, 2014. The ALJ then began the five-step analysis. At step one, the ALJ found that Mr. Oneal has not engaged in substantial gainful employment since February 1, 2009. At step two, the ALJ found that Mr. Oneal has the following severe impairments: depression, Ebstein's anomaly with mild to moderate cardiac abnormalities, and minimal to mild asthma or COPD. The ALJ also found that Mr. Oneal's blind left eye does not impose work-related limitations and thus does not qualify as a severe impairment. At step three, the ALJ concluded that Mr. Oneal does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ then

determined that Mr. Oneal has an RFC to perform light work that can be learned in a short time by demonstration, has no interaction with the general public, and has only incidental contact with coworkers. At step four, the ALJ determined that Mr. Oneal is unable to perform any of his past relevant work. At step five, the ALJ determined that there are a significant number of jobs available in the national economy that Mr. Oneal can perform. Therefore, the ALJ denied his application for DIB.

## IV. DISCUSSION

In his request for judicial review, Mr. Oneal raises four issues, which he claims constitute reversible error. First, Mr. Oneal argues that the ALJ failed to support with substantial evidence her determination that his depression, post-traumatic stress disorder, and GAF scores did not render him disabled under the Act. Second, Mr. Oneal argues that reversal is required because the ALJ refused to summon a medical advisor to determine medical equivalence for step three of the disability determination. Third, Mr. Oneal argues that the ALJ's credibility determination was patently erroneous because it was based on perfunctory boilerplate language. And fourth, Mr. Oneal asserts that the ALJ failed to give consideration to each of his impairments, especially his difficulties in maintaining concentration, persistence, and pace.

### A. The ALJ adequately supported her determination that Mr. Oneal's mental health impairments did not constitute a disability under the Act.

Mr. Oneal argues that the ALJ improperly rejected the evidence regarding his mental health impairments. Specifically, he objects to the ALJ discounting the GAF score of 40, which was determined by the Meridian counselor in 2011. The ALJ gave less weight to the score because the treatment Mr. Oneal received and his ability to perform work in his home was inconsistent with such a low GAF score. Mr. Oneal argues that this constitutes an improper substitution of the ALJ's own medical opinion for independent medical determinations. Additionally, Mr. Oneal argues that

7

a GAF score of 40, accorded its proper weight, automatically equals disability. The Court is not persuaded by Mr. Oneal's argument because he ALJ did not improperly rely on her own "non-expert" medical opinion.

"The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990). Consequently, the ALJ may not ignore medical opinions or substitute its own medical judgment. *Olsen v. Colvin*, 551 F. App'x 868, 874 (7th Cir. 2014). "[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000), *as amended* (Dec. 13, 2000). Only "acceptable medical sources" may provide evidence to establish an impairment. 20 C.F.R. § 416.913(a). To be an "acceptable medical source," the health professional must be a licensed physician or a licensed or certified psychologist. 20 C.F.R. § 416.913(a)(1)–(2). Evidence from sources outside those defined as "acceptable medical sources"[2] can be considered by the ALJ, but it is not enough, on its own, to establish the existence of a medically determinable impairment. 20 C.F.R. § 416.913(d).

As the ALJ pointed out, the record contains competing evaluations of Mr. Oneal's mental health ([Filing No. 13-2 at 13](#)). Further, the ALJ noted that the Meridian GAF score was determined by a counselor who is not an "acceptable medical source" ([Filing No. 13-2 at 13](#)). The only "acceptable medical source" who conducted a mental health evaluation of Mr. Oneal was Dr. McKinney. As such, her report should be, and was, accorded greater weight. Although the

---

[2] Therapists are given as an affirmative example of the "other sources" category. 20 C.F.R. § 416.913(d)(1).

Meridian counselor[3] calculated Mr. Oneal's GAF score to be 40, Dr. McKinney found Mr. Oneal's GAF score to be 62, a dramatic difference. The evaluations were conducted within six weeks of each other, and the record demonstrates no clear change in Mr. Oneal's condition between the two evaluations apart from the disparate scores. It was permissible for the ALJ to give greater weight to the GAF score that was more consistent with the remainder of the record. The ALJ's determination did not ignore the Meridian determination in favor of the ALJ's own judgment. *See Clifford,* 227 F.3d at 870. Rather, the ALJ discussed both the Meridian and McKinney evaluations and ascribed more weight to the report prepared by the medical doctor. Because the ALJ did discuss and rely on other medical evidence in the record, she did not impermissibly substitute her own non-expert medical judgment.

Mr. Oneal also alleges that a GAF score of 40 is, by itself, proof of disability. This argument consistently has been rejected. "[T]he [GAF] score does not reflect the clinician's opinion of functional capacity." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Certainly, the score can help measure functional capacity, but GAF scores begin the analysis for the ALJ; it is not the end of the analysis. *Id.* Here, the ALJ discussed the inconsistent GAF scores and assigned them limited weight, focusing instead on the documented symptoms and functional limitations revealed by the record.

Mr. Oneal also argues that the ALJ failed to consider all the relevant medical evidence. However, the ALJ devoted a page and a half to discussing the counseling Mr. Oneal received through Meridian. The ALJ chose to give that medical evidence little weight for reasons already discussed, but that decision is within the ALJ's discretion. Summarizing the medical evidence and

---

[3] The Meridian employee who conducted the evaluation, Sayward Salazar, possesses a Masters Degree in social work and is a Qualified Behavioral Health Professional. The report was cosigned by a Dr. Bigelon, PhD. However, it appears that Dr. Bigelon signed only as a supervisor and did not actually conduct the evaluation ([Filing No. 13-7 at 18](Filing No. 13-7 at 18)).

then drawing conclusions from it does not constitute ignoring relevant evidence. *Olsen*, 551 F. App'x at 875.

In short, the ALJ's determination that Mr. Oneal was not disabled was supported by substantial evidence despite the determination by the Meridian counselor that Mr. Oneal's GAF score was 40.

### B. The ALJ's refusal to summon a medical advisor to determine medical equivalence is not grounds for reversal.

Mr. Oneal argues that the ALJ's failure to summon a medical advisor to testify about medical equivalence is reversible error. However, the ALJ properly relied on the state agency physicians on the question of medical equivalence.

In determining medical equivalence, the ALJ is permitted to rely upon the determinations of state agency physicians. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). Here, the ALJ relied on the opinions of several state agency reviewing physicians. Mr. Oneal acknowledges this fact (Filing No. 18 at 13). Thus, because the ALJ relied upon sufficient medical evidence regarding medical equivalence, the ALJ's failure to summon another medical advisor does not constitute reversible error.

Mr. Oneal argues, however, that the opinions by the state agency physicians were formed in July and October of 2011 and therefore did not include subsequent medical developments and treatment, including the counseling Mr. Oneal received from October 2011 to September 2012. But this argument is unavailing. The ALJ is not limited to consideration of only those medical opinions that are most recent in time. The ALJ considered all the medical record evidence when making her determination of disability.

In *Scott v. Sullivan*, the ALJ relied on a disability examination by a state agency physician even though there were subsequent medical developments. 898 F.2d 519 (7th Cir. 1990). In *Scott*,

the petitioner was suffering from serious back pain. *Id.* at 520. Mr. Scott's doctor found that he had physical impairments but that he "could perform all of the activities of daily living." *Id.* at 521. Mr. Scott filed for disability benefits on September 8, 1986, and was examined by a state agency physician two months later, on November 4, 1986. *Id.* at 524. From the physician's examination, it was determined that Mr. Scott failed to meet the requirements for medical equivalence. *Id.* Several months later, on February 20, 1987, Mr. Scott's doctor reexamined him and found that his condition had worsened to render him "totally disabled as far as Social Security is concerned." *Id.* at 521. A hearing was held on June 1, 1987, and the ALJ denied Mr. Scott's application for disability.[4] *Id.* at 522. The district court and the Seventh Circuit affirmed the ALJ's decision. The Seventh Circuit specifically held that the ALJ had properly relied upon the state agency physician's medical equivalence determination. *Id.* at 524. Despite the subsequent medical developments and contradictory medical opinion, the ALJ's reliance on the state agency physician's opinion was proper and sufficient.

Here, the ALJ properly relied on the state agency physicians' determinations even though there were medical developments subsequent to those determinations.

**C. The ALJ properly evaluated Mr. Oneal's credibility.**

Next, Mr. Oneal argues that the ALJ's credibility determination was perfunctory and inadequate. The Court disagrees—the ALJ's credibility determination was supported by significant discussion even though the primary paragraph includes boilerplate language.

Boilerplate language, especially regarding the credibility determination, can be problematic because it gives little indication of the evidence the ALJ used to make the determination. *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). In *Bjornson*, the Seventh

---

[4] After the hearing, the ALJ allowed Mr. Scott to submit another doctor's written opinion on whether his conditions established medical equivalence but that letter failed to offer an opinion on the subject.

11

Circuit was troubled by language that is almost identical to the language in this case. *Id.* at 644; (Filing No. 13-2 at 16). Specifically, the Seventh Circuit decided that the apparent reliance on the claimant's residual functional capacity in making the credibility determination was improper because the claimant's credibility was an integral part of the residual functional capacity analysis. *Bjornson*, 671 F.3d at 645–46. In other words, credibility must be determined first, and then used, in part, to make the residual functional capacity assessment. The boilerplate language, combined with the ALJ's failure to consider and give proper weight to significant medical evidence, resulted in reversal. *Id.* at 649.

Subsequent cases, however, have approved credibility determinations that include boilerplate language as long as the ALJ expands on his or her reasoning to provide a sufficient basis for the credibility assessment. *Richison v. Astrue*, 462 F. App'x 622, 625 (7th Cir. 2012). *See also Orienti v. Astrue*, 958 F. Supp. 2d 961, 976 (N.D. Ill. 2013) ("While these sorts of boilerplate statements are inadequate, *by themselves*, to support a credibility finding, their use does not make a credibility determination invalid.") (internal citations omitted). For example, in *Richison*, the court cited several facts discussed by the ALJ—namely, activities the claimant regularly engaged in that were inconsistent with the claimant's alleged symptoms and medical reports showing that the claimant improved over time—as being sufficient support for the credibility assessment. 462 F. App'x at 625–26.

Despite inclusion of boilerplate language, the ALJ provided sufficient support for her credibility determination. The ALJ noted that Mr. Oneal has received only counseling instead of more substantive mental health treatments that might be expected when a claimant is alleging disabling mental health impairments. The ALJ likewise explained that Mr. Oneal's testimony and function reports revealed frequent activities that were at odds with his assertions of disability,

including yard work, household repairs, cleaning, and childcare. Further, the ALJ found that the record included little evidence of depression or post-traumatic stress disorder despite Mr. Oneal's diagnosis. Finally, the ALJ cited the examination of Mr. Oneal by Dr. Brater, Dr. McKinney, and the state agency physicians as failing to demonstrate medical support for Mr. Oneal's assertions of disability (Filing No. 13-2 at 16–18). The ALJ's decision might not clearly distinguish between the credibility assessment and the RFC assessment, but both are supported by sufficient evidence.

Mr. Oneal argues that the ALJ ignored the psychotherapy treatment and GAF scores, but those arguments have been disposed of above. The ALJ properly discussed both GAF scores and chose to accept one score because it was more consistent with the remainder of the record. Further, the ALJ did consider the psychotherapy treatment, without giving it controlling weight, which is sufficient to support her determination (Filing No. 13-2 at 17).

Despite the inclusion of boilerplate language, the ALJ's credibility assessment was adequately conducted and supported by evidence.

**D. The ALJ properly considered each of Mr. Oneal's impairments.**

Mr. Oneal asserts that the ALJ failed to give adequate consideration to each of his impairments in making the disability determination. Foremost, Mr. Oneal argues that the ALJ failed to account for his impairments in concentration, persistence, and pace when determining his RFC.

First, Mr. Oneal broadly argues that "[t]he ALJ impermissibly failed to account for the combined disabling result of his quite severe mental illness, including the moderate difficulties the ALJ found in his Social functioning." (Filing No. 18 at 20.) This argument is unavailing. "The ALJ is not required to mention every piece of evidence but must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled." *Craft*, 539 F.3d

13

at 673 (quoting *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)). The ALJ discussed at length the medical evidence related to Mr. Oneal's mental health. After weighing the evidence, including Mr. Oneal's difficulties in social functioning, the ALJ determined that Mr. Oneal was not disabled. This process—considering the evidence and then making a determination—is how an ALJ is supposed to proceed. Notably, Mr. Oneal does not provide a single example of medical history that the ALJ ignored. Rather, everything Mr. Oneal raises was included in the ALJ's written decision; the evidence was not ignored, it simply was weighed against Mr. Oneal. After considering the evidence, the ALJ came to a decision adverse to Mr. Oneal, but that fact by itself does not provide grounds for reversal.

More specifically, Mr. Oneal argues that the ALJ failed to adequately account for his mild difficulties in concentration, persistence, and pace when determining his RFC. For support, Mr. Oneal cites *Yost v. Astrue*, 2012 WL 2814373 (N.D. Ill. 2012). In *Yost,* the court noted that the ALJ failed to discuss the claimant's difficulties in maintaining concentration, persistence, and pace in the hypotheticals posed to the vocational expert. *Id.* at 20. Even though the ALJ limited the hypothetical jobs to "simple, unskilled jobs," that language was not equivalent to impairments in maintaining concentration, persistence, and pace. The court, on review, could not meaningfully determine whether the ALJ's decision considered the impairments in concentration, persistence, and pace. *Id.* Therefore, the ALJ's decision was reversed. *Id.* In this case, the ALJ determined from the medical evidence and the testimony from Mr. Oneal that he suffers only mild impairments in concentration, persistence, and pace ([Filing No. 13-2 at 15](#)). Throughout the ALJ's decision, the ALJ noted concentration and pace when considering Mr. Oneal's impairments and RFC ([Filing No. 13-2 at 14](#)–19). Thus, the decision in *Yost* is not helpful to Mr. Oneal. Because the ALJ

discussed all of Mr. Oneal's impairments and considered them when determining disability and RFC, Mr. Oneal's fourth argument does not warrant reversal of the ALJ's decision.

## V. CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED**. Mr. Oneal's appeal is **DISMISSED**.

**SO ORDERED.**

Date: 3/20/2015

*[signature: Tanya Walton Pratt]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov